UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK RUFFIN, JR., individually and on behalf of all other persons similarly situated, LORETTA DONATELLI, individually and on behalf of all other persons similarly situated, JESUS SIASOCO, JENNIFER NOONAN, JENNIFER ROLLINS, MARILYN PIZARRO, JOHNNY RAMOS, KRYSTAL L. BECK, TONY HAUGABOOK, RICARDO BARRIGA-GALINDO, ANGELA REYNOLDS, KELVIN L. MARTIN, DARREN BOW, VITTA BARGAINER, <br><br> Plaintiffs, <br><br> v. <br><br> AVIS BUDGET CAR RENTAL, LLC, AVIS RENT A CAR SYSTEM, LLC, <br><br> Defendants. | Civil Action No. 11-01069 (SDW)(MCA) <br><br> **OPINION** <br><br> June 28, 2012 |

**WIGENTON**, District Judge.

Before the Court is Frederick Ruffin, Jr. ("Ruffin") and Loretta Donatelli's ("Donatelli") (collectively "Plaintiffs") Motion to Conditionally Certify a Class under 29 U.S.C. § 216(b) ("Motion"). This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1332(d)(2)(A) and 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391. This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants Plaintiffs' Motion.

1

**FACTUAL AND PROCEDURAL HISTORY**

Ruffin and Donatelli were employed by Defendants Avis Budget Car Rental, LLC[1] and Avis Rent A Car System, LLC[2] (collectively "Defendants" or "Avis"). (Compl. ¶¶ 15, 16). Avis operates auto rental facilities at airports and other locations within the United States. (Id. ¶ 1; Markey Decl. Ex. I, Linnen Decl. ¶ 6.) Ruffin was employed by Defendants as a shift manager[3] from March 2010 to September 2010 at Defendants' Lambert-St. Louis International Airport location. (Compl. ¶ 15.) Donnatelli, on the other hand, was in Defendants' employ from December 1995 to December 2008 at Defendants' Chicago O'Hare International Airport location. (Id. ¶ 16.) During her tenure, Donatelli held several positions including preferred services manager, customer service manager and customer loyalty manager. (Id.) Generally, shift managers supervise employees in one or more of the following groups: rental sales associates, courtesy bus drivers, roving rapid return agents, service agents, dispatchers and gate guards. (Markey Decl. Ex. I, Linnen Decl. ¶ 11.) Shift managers are the lowest level on the Avis management hierarchy. After shift manager is an airport manager, then a district manager, followed by a city manager, then a region manager, who is the most senior manager assigned to a region. (Pls.' Br. Ex. A, Labor Dep. 43:12-44:3.)

Plaintiffs allege that Avis "failed to pay them for all hours worked as well as overtime compensation . . . in violation of the [Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.,] and applicable provisions of the Missouri Minimum Wage Law[, Mo. Rev. Stat. § 290.505,] and Illinois Wage Laws[, 820 Ill. Comp. Stat. § 115/1 et seq. and the Illinois Administrative Code § 210.100 et seq.]" even though they performed non-exempt duties such as

---

[1] This company is a wholly owned subsidiary of Avis Budget Group, Inc. (Compl. ¶ 18.)
[2] This company is a wholly owned subsidiary of Avis Budget Car Rental, LLC. (Id. ¶ 19.)
[3] The title of shift manager changed to operations manager. However, the change was merely a title change. (Pls.' Br. Ex. A, Labor Dep. 39:3-19.)

"cleaning cars, moving cars around the parking lot, checking inventory, renting cars, and/or installing child car seats." (Compl. ¶¶ 2-4, 17, 44, 50.) Plaintiffs also allege that they did not hire or fire employees and they had minimal input in hiring or firing decisions. (Id. ¶ 45.) Plaintiffs further maintain that their duties "required little skill and no capital investment" and they did not have "managerial responsibilities or . . . exercise . . . independent judgment." (Id. ¶ 47.)

> Plaintiffs seek to bring this action on behalf of themselves and
>
>> all persons who are or were formerly employed by Defendants in the United States at any time since February 24, 2008[,] to the entry of judgment in this case . . . as shift managers, preferred managers, and other comparable positions with different titles (including but not limited to customer service managers and customer loyalty managers), who were non-exempt employees within the meaning of the FLSA.

(Id. ¶ 21.)

**LEGAL STANDARD**

The FLSA seeks "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lack[] sufficient bargaining power to secure for themselves a minimum subsistence wage." Symczky v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011) (internal quotation marks and citation omitted). Pursuant to the FLSA's collective action mechanism, an individual asserting a violation of the FLSA "may bring an action 'on behalf of himself . . . and other employees similarly situated,' subject to the requirement that '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" Id. (quoting 29 U.S.C. § 216(b)) (alteration in original). The Third Circuit

describes the legal framework and level of proof necessary for conditional certification as follows:

> In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a <u>two-tiered analysis</u>.[4] During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. [I]f the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. In the absence of statutory guidance or appellate precedent on the proper definition of "similarly situated," a divergence of authority has emerged on the level of proof required at this stage. Some trial courts within our circuit have allowed a plaintiff to satisfy her burden simply by making a "substantial allegation" in her pleadings that she and the prospective party plaintiffs suffered from a single decision, plan or policy, but the majority of our circuit's trial courts have required the plaintiff to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated.
>
> Under the <u>"modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. We believe the "modest factual showing" standard—which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions—best comports with congressional intent and the Supreme Court's directive that a court "ascertain[] the contours of [a collective] action at the outset."</u>
>
> After discovery, and with the benefit of "a much thicker record than it had at the notice stage," a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff. "This second stage is less lenient, and the plaintiff bears a heavier burden."

<u>Symczky</u>, 656 F.3d at 192-93 (emphasis added) (alteration in original) (footnote omitted) (citations omitted); <u>see also</u> <u>Troncone v. Velahos</u>, Civ. A. No. 10-2961, 2011 U.S. Dist. LEXIS

---

[4] Defendants maintain that this Court should disregard the two-tiered approach because it "has no foundation." (Defs.' Opp'n Br. 26.) Defendants' argument lacks merit because it conflicts with the standard set forth by the Third Circuit in <u>Symczky</u>.

4

82672, at *7 (D.N.J. July 28, 2011) ("Certification of a collective action occurs in two stages: (1) conditional certification and notice, and (2) final certification."); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (courts addressing the issue of whether plaintiffs are similarly situated "have generally explicitly adopted or implicitly recognized a two-step approach").

It is generally established that "the standard applied at this [first] stage is fairly lenient." Holesapple v. E-Mortgage Mgmt., LLC, Civ. A. No. 11-0769, 2011 U.S. Dist. LEXIS 149297, at *7 (D.N.J. Dec. 29, 2011); see also Morisky, 111 F. Supp. 2d at 497 (the determination of whether conditional certification is proper "is made using a fairly lenient standard"). Furthermore, in determining whether the plaintiffs have made a "modest factual showing," "the merits of the plaintiffs' claims are not addressed." Bishop v. AT&T Corp., 256 F.R.D. 503, 507 (W.D. Pa. 2009).

**DISCUSSION**

Here, Defendants contend that conditional certification should be denied because the members of the putative class are not similarly situated. (Defs.' Opp'n Br. 14.) This Court disagrees because Plaintiffs have satisfied their burden under the "modest factual showing" standard. Although Avis maintains that shift managers' duties and responsibilities differ depending on a number of factors including the location, location size, rental volume and geography, (see generally Markey Decl. Ex. I, Linnen Decl.), these variations are not evident in the job descriptions Avis promulgates. Rose Ann Labor ("Labor"), Avis's Director of Compensation, testified that the Compensation Department prepares the job descriptions for shift managers. (Pls.' Br. Ex. A, Labor Dep. 51:13-15.) Labor also testified that the job description and the essential duties and responsibilities of shift managers are the same regardless of the state,

location type, location size, shift managers' hours, location's sales volume, or the supervising airport manager. (Id. at 51:23-52:15, 56:20-24, 57:11-22.) She also testified that the job description was accurate and that Avis expected shift managers to perform the work listed in the job description. (Id. at 55:18-56:11.) Moreover, Labor testified that all shift managers in the country are classified as exempt and in making that classification Avis does not take into account the location type, size, sales volume, hours worked or geographic area. (Id. at 59:6-61:15.)

Similarly, Yvonne Trupiano ("Trupiano"), Defendants' Director of Talent Acquisition, testified that regardless of the location, all operations managers are subject to the same workplace policies and receive the same orientation manual. (Pls.' Br. Ex. B, Trupiano Dep. 5:22-25, 33:23-34:1, 35:19-36:1.) Trupiano also testified that as of 2010, all shift managers, operations managers and preferred service managers are subject to the same management training curriculum and receive the Management Development Tool Kit Phase I and II regardless of the location or geographic region. (Id. at 37:3-38:16, 50:6-21, 51:7-52:11.) According to Trupiano, prior to 2010, shift managers received corporate programs which varied by area and region. (Id. at 38:17-23.) Nonetheless, she testified that even then all shift managers received the same training manual. (Id. at 40:21-23.) Furthermore, she testified that the Basic Daily Duties promulgated by the corporate office applied to all shift managers and operations managers regardless of their location or geographic region. (Id. at 53:1-20.) Even Avis concedes that "all employees in the same job position, regardless of the employer or the position, are the same in some respects." (Defs.' Opp'n Br. 16.) Labor and Trupiano's testimony and the related documents support Plaintiffs' assertion that the job description, job advertisements and training for the shift manager position applied to all shift managers and that Plaintiffs and members of the putative class were subject to a nationwide policy that classified them as exempt.

Nonetheless, Defendants assert that the manner in which members of the putative class diverged from Avis's "expectations depend upon that particular individual's circumstances." (Defs.' Opp'n Br. 14-15.) In essence, Avis is asserting that factors such as the location type, size, and sales volume will affect how each shift manager diverged from his/her official duties. This Court is not persuaded by Avis's argument. At this stage, Plaintiffs are required only to demonstrate that they are "<u>similarly</u> situated, not identically situated." <u>Libront v. Columbus McKinnon Corp.</u>, No. 83-8582, 1992 U.S. Dist. LEXIS 19029, at *6 (W.D.N.Y. Nov. 21, 1992). Plaintiffs have made that showing.

Testimony from Plaintiffs and opt-in plaintiffs indicate that they all performed duties they allege are non-exempt. For instance, Donatelli testified that as a shift manager she washed cars, directed traffic, moved cars, rented cars at the counter, "r[a]n . . . contracts to cars," and "add[ed] cars to the ready line." (Pls.' Br. Ex. C, Donatelli Dep. 81:21-24, 82:6-9, 113:15-16, 116:15-18, 124:10-18, 335:2-6.) Ruffin also stated that he "spent a majority of his day" as a shift manager performing "hourly employees' work" such as shuttling cars, cleaning cars, renting cars, running tickets, moving cars and directing the traffic flow of customers who return cars. (Pls.' Br. Ex. I, Ruffin Dep. 18:19-23, 19:2-12, 73:14-21.) Krystal Beck ("Beck"), a shift manager for the Detroit Metro Airport location, also testified that she cleaned cars, put cars in the ready line and ran contracts to the cars. (Markey Decl. Ex. C, Beck Dep. 115:2-4, 236:3, 236:19-20; Defs.' Opp'n Br. 23.) In fact, Beck testified that she spent about eighty percent of her day "doing hourly task[s]." (Markey Decl. Ex. C, Beck Dep. 234:9-11.) Jennifer Rollins, a shift manager at the Ontario Airport location, also testified that she moved cars. (Markey Decl. Ex. E, Rollins Dep. 65:7-8, 198:18-20.) Furthermore, Johnny Ramos, a shift manager at the Reagan National Airport testified that he spent "the bulk of his time" performing "hourly tasks." (Markey Decl.

Ex. D, Ramos Dep. 126: 23-24; Defs.' Opp'n Br. 23.) In fact, he testified that he spent "roughly, the entire day" performing hourly work. (Markey Decl. Ex. D, Ramos Dep. 126:25-127:6.) Jesus Siasoco, a Senior Operations Manager at the San Francisco Airport location, also testified that he processed returned cars, and checked in cars when he was a shift manager. (Markey Decl. Ex. B, Siasoco Dep. 194:18, 195:21-22, 196:7-12.) Overall, Plaintiffs have provided sufficient evidence to meet their burden at the notice stage. As the court noted in Ravenell v. Avis Budget Car Rental, LLC, "[O]nce Plaintiffs have met their burden at the notice stage, Defendant cannot overcome [this] showing by arguing that individual issues may dominate; rather, if after notice to the putative plaintiffs, it appears that individual issues do in fact dominate, the Defendant may move the Court to decertify the class." No. 08-CV-2113, 2010 U.S. Dist. LEXIS 72563, at *13 (E.D.N.Y. July 19, 2010) (internal quotations and citations omitted) (alternations in original).

Further, Defendants argue that Plaintiffs' Motion should be denied because some members of the putative class are employed by Avis Budget Car Rental, LLC while others are employed by Avis Rent A Car System, LLC. (Defs.' Opp'n Br. 15 n.3.) This Court disagrees. As one court has pointed out, "[i]n instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." Manning v. Goldbelt Falcon, Civ. A. No. 08-3427, 2010 U.S. Dist. LEXIS 104029, at *8-*9 (D.N.J. Sept. 29, 2010). The Manning Court further stated that the fact that the defendants are separate employers is not dispositive in a stage one analysis. Id. at *12.

Defendants, relying on Tahir v. Avis Budget Group, Inc., Civ. A. No., 09-3495, 2011 U.S. Dist. LEXIS 37279 (D.N.J. Apr. 6, 2011), also argue that Plaintiffs' Motion should be

8

denied. (Defs.' Br. 17, 19.) This Court acknowledges that Plaintiffs and the plaintiff in Tahir rely on similar evidence to prove that Defendants violated the FLSA. This Court nonetheless concludes that Defendants' reliance on Tahir is misplaced. Similar to Plaintiffs, the plaintiff in Tahir, who was employed by Avis as an Airport Manager B at its Dulles International Airport location, alleged that Avis violated the FLSA because it failed to compensate him and other similarly situated Airport Manager Bs for overtime. Tahir, 2011 U.S. Dist. LEXIS 37279, at *2. The plaintiff moved for conditional certification after the close of discovery. Id. at *3-4. The court denied conditional certification. In making that determination, the court observed:

> Unlike the typical motion for conditional certification, . . . [p]laintiff's motion presents the similarly situated question after the close of discovery. In that way, it is more akin to the second stage . . . . The [c]ourt . . . [concludes] that, in such a hybrid situation involving a conditional certification motion filed at a point in the litigation in which the factual record is completely developed, the stricter standard should be applied in analyzing whether the named plaintiff has demonstrated that he is similarly situated to the putative class members.

Id. at *6 (citing Morisky, 111 F. Supp. 2d at 498) (emphasis added). Here, unlike in Tahir, discovery has not concluded. Therefore, this Court must apply the more lenient standard. See Manning, 2010 U.S. Dist. LEXIS 104029, at *5 ("[T]he case is not yet ready for trial and discovery has not been formally concluded, so it is more appropriate to consider [p]laintiff's motion under the burden of proof used for stage one.").

Defendants also maintain that the proposed class action raises potential due process issues because some of the putative class members have waived their right to a jury trial while others have not. (Defs.' Opp'n Br. 25.) Avis contends that as of March 2006, its employment applications contained a jury waiver provision. Therefore, any class member hired after that date has waived his/her right to a jury trial and is not similarly situated to individuals who were hired

9

before March 2006 and have therefore not waived their right to a jury trial. (Id.) This Court disagrees. In Han v. Sterling Nat'l Mortg. Co., No. 09-CV-5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sept. 14, 2011), the plaintiff brought an action on behalf of himself and other similarly situated individuals seeking unpaid minimum wages and overtime compensation under the FLSA and the New York Labor Law. Similar to Avis, the defendants opposed certification on the basis that the plaintiff could not adequately represent the class because he had waived his right to trial by jury while other members of the putative class had not. Id. at *25. The court concluded that "[t]he fact that Han's claims will be decided by the [c]ourt if the case proceeds to trial, while other class members will have their claims decided by the jury does not make Han's interest antagonistic to the interest of the jury trial class members, and does not provide a basis to conclude that he cannot fairly and adequately present the interests of all class members." Id. at *25-*26. Although the Han Court analyzed the issue under traditional Fed. R. Civ. P. 23(a) principles, this Court finds its analysis useful and instructive especially in light of the fact that this Court has the discretion to create a subclass if, upon the completion of discovery, the record necessitates it. Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); see also Rodolico v. Unisys Corp., 199 F.R.D. 468, 484 (E.D.N.Y. 2001) ("If, at a later point in the litigation, the Court finds that a collective action cannot accommodate the proposed individual defenses, the Court has the discretion to create a subclass or to dismantle the collective action."). Therefore, the fact that some putative class members may have waived their right to a jury trial and others have not is a not a basis to deny conditional certification.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion is GRANTED.

s/ Susan D. Wigenton, U.S.D.J.

cc: Magistrate Judge Madeline C. Arleo