NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FREDERICK RUFFIN, JR. and LORETTA DONATELLI, individually and on Behalf of All Other Persons Similarly Situated, : : : : Plaintiffs, : : v. : : : AVIS BUDGET CAR RENTAL, LLC and AVIS RENT A CAR SYSTEM, LLC, : : : Defendants. | Civil Action No. 11-1069 (SDW) (MCA) **OPINION** January 27, 2014 |

**WIGENTON**, District Judge.

Before the Court is Avis Budget Car Rental, LLC and Avis Rent A Car System, LLC's ("Defendants" or "Avis") Motion for Decertification of the Fair Labor Standards Act ("FLSA") collective action. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 § U.S.C. 216(b). Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' Motion for Decertification is **denied**.

**BACKGROUND**

Avis operates auto rental facilities at airports and other locations in the United States. (Compl. ¶ 1.) Plaintiffs are a nationwide class of Shift Managers (and other comparable positions)[1] who "are or were formerly employed by Defendants . . . at any time since February

---
[1] Although the putative class consists of Shift Managers, Preferred Managers, and other comparable positions with different titles, nearly every deposed Plaintiff worked as a Shift Manager.

1

24, 2008 to the entry of judgment in the case." (Id. ¶ 21.) Plaintiffs allege that Avis misclassified them as exempt from the FLSA and "failed to pay them for all hours worked as well as overtime compensation" even though they performed non-exempt duties such as "cleaning cars, moving cars around the parking lot, checking inventory, renting cars, and/or installing child car seats." (Id. ¶¶ 2-4, 17, 44, 50.)

Frederick Ruffin, Jr. and Loretta Donatelli—individually and on behalf of similarly situated Plaintiffs—commenced this action against Avis on February 24, 2011. (Dkt. 1.) On June 28, 2012, this Court granted conditional collective action certification to Plaintiffs. (Dkt. 61.) On August 2, 2013, Defendants moved for decertification of the conditional certification. (Dkt. 116.)

**LEGAL STANDARD**

Under the FLSA, an employee may pursue a civil action to recover unpaid overtime on his own behalf as well as on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b). A FLSA collective action allows individuals who are similarly situated to the named plaintiff to opt in to the action by filing a written consent with the Court. Id. The FLSA contains an exemption that does not require employers to pay overtime wages to employees who serve in a bona fide executive, administrative, or professional capacity. See id. at § 213(a). To qualify as exempt, an employee must meet the following elements:

> (1) receives compensation on a salary basis; (2) is charged with the primary duty of managing the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) the employee customarily and regularly directs the work of two or more employees; and (4) has authority to hire or fire other employees or the employee's 'suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'

Aquilino v. Home Depot, U.S.A., Inc., No. 04-04100, 2011 WL 564039, at *5 (D.N.J. Feb. 15, 2011) (citing 29 C.F.R. § 541.100(a)(1)-(4)).

The term "similarly situated" is not defined in the FLSA and neither the United States Supreme Court nor the Third Circuit has provided guidance on its meaning. Manning v. Goldbelt Falcon, LLC, No. 08-3427, 2010 WL 3906735, at *1 (D.N.J. Sept. 29, 2010) (citing Kronick v. Bebe Stores, Inc., No. 07-4514, 2008 WL 4546368, at *1 (D.N.J. Oct. 2, 2008)). Thus, district courts in the Third Circuit generally follow a two-tier approach in determining whether the named plaintiff is similarly situated to the potential opt-ins such that the collective action warrants certification under the statute. See Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000).

At the first stage for conditional certification, "the court determines whether notice of the action should be given to potential class members." Id. This analysis usually occurs early in the litigation when the court only has minimal evidence; therefore, courts use a "fairly lenient standard." Zavala v. Wal–Mart Stores, Inc., No. 03-5309, 2010 WL 2652510, at *2 (D.N.J. June 25, 2010) (quoting Morisky, 111 F. Supp. 2d at 497).

At the second stage, the court reexamines the "similarly situated" inquiry. Morisky, 111 F. Supp. 2d at 497 (quoting Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan. 1998)). Because the second stage occurs after discovery is "largely complete and the case is ready for trial . . . the court has much more information on which to base its decision and, as a result, now employs a stricter standard." Id. To determine at this stage whether the plaintiffs have met their burden of showing that they are similarly situated, the court examines various factors, including (1) the "disparate factual and employment settings of the individual plaintiffs,"

(2) "the various defenses available to defendants," and (3) "fairness and procedural considerations." Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987).

**DISCUSSION**

**A. Parties' Arguments**

This case is currently at the second stage of the two-stage certification approach as Defendants have moved for decertification of the FLSA collective action. Defendants argue that Plaintiffs cannot show that they are similarly situated as "different Plaintiffs had very different job duties" based on the deposition testimony of sixteen individuals. (Defs. Br. 1.) Specifically, Defendants point to variations in Plaintiffs' testimony regarding management duties such as interviewing and hiring, coaching employees, handling discipline conflicts, scheduling, and responding to customer complaints. (Id. at 2, 6-16.) Defendants also identify differing testimony relating to how Plaintiffs rate the importance of management tasks, Plaintiffs' freedom from supervision, and the amount of time spent performing exempt work. (Id. at 16-21.) Defendants further argue that Plaintiffs cannot collectively establish the applicability of the executive or administrative exemptions because of the lack of common evidence. (Id. at 6-26.)

In opposition, Plaintiffs contend that Defendants exaggerate and mischaracterize the factual differences among Plaintiffs. Plaintiffs argue that the overwhelming evidence demonstrates that Shift Managers were primarily responsible for "Basic Daily Duties" which included non-exempt tasks such as renting, cleaning, shuttling, and checking-in and counting vehicles. (Pls. Opp. 1, 5-6.) Furthermore, Plaintiffs contend that Defendants' policies mandated uniform training for Shift Managers nationwide, uniform employee compensation, and a common job description. (Id. at 6-7.) Plaintiffs also argue that the deposition testimony of

4

twenty-three Shift Managers indicate that "their job duties are fundamentally the same" in that "they spent the majority of time performing [ ] non-managerial duties and [ ] cannot qualify under the executive exemption of the FLSA because their primary duty is not management." (Id. at 8-9.)

### B. Analysis

In determining whether to decertify the FLSA collective action at issue, this Court must consider the following factors: (1) the "disparate factual and employment settings of the individual plaintiffs," (2) "the various defenses available to defendants," and (3) "fairness and procedural considerations." Lusardi, 118 F.R.D. at 359.

With respect to the first factor—factual and employment settings—this Court finds that the evidence reflects that Plaintiffs performed similar day-to-day functions. As courts have routinely held, Plaintiffs do not need to be identical to be similarly situated for purposes of an FLSA collective action. See e.g., Stillman v. Staples, Inc., No. 07-849, 2009 WL 1437817, at *18 (D.N.J. May 15, 2009) (citing Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 573-74 (E.D. La. 2008) (stating that "the similarly situated standard of § 216(b) of the FLSA does not require that plaintiffs be identical")); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 265 (D. Conn. 2002) (noting that "several courts have held that it is appropriate to bring an FLSA exemption claim as a class action with regard to employees who perform similar, but not identical, duties"). Minor factual deviations do not defeat collective treatment. See Jacob v. Duane Reade, Inc., 289 F.R.D. 408, 421 on reconsideration in part, 293 F.R.D. 578 (S.D.N.Y. 2013) (determining that plaintiffs were similarly situated despite minor disparities because plaintiffs generally "perform a similar swath of duties, ranging from customer service to office work").

Here, deposition testimony of Plaintiffs and Defendants' witnesses demonstrates that Plaintiffs performed primarily the same duties, were nearly all given the job title and job description of Shift Manager, underwent the same training program, and were subject to the same policies—including not being paid overtime wages. (See e.g., Pls. Opp. 8-9 nn.5-13 (shift managers had similar job duties); see also, Labar (Ex. 2) 58-65 and Labar (Ex. 5) at 34, 131 (shift managers had similar duties, job descriptions, and were exempt from overtime); see also, Trupiano (Ex. 1) at 57-59, 69-70, 135-39 and Trupiano (Ex. 11) at 25-41, 44-45, 49-59 (shift managers were subject to the same policies, procedures, work rules, and participated in the same training programs); see also, Huff (Ex. 24) at 101-02, Root (Ex. 25) at 92, and Wagner (Ex. 26) at 35-36 (shift managers participated in the same standardized training programs)). Although Defendants emphasize differences in testimony with respect to managerial duties, the record shows that Plaintiffs "do not regularly interview, schedule, review performance, train, or make recommendations about employment decisions." (Pls. Opp. 12; see also Pls. Opp. 11-12. nn.18-19, 21 & 23 (citing relevant individual plaintiff deposition testimony)). While there are disparities in the deposition testimony about job duties, they are not material and "any such differences are outweighed by the similarities between those Plaintiffs." Garcia v. Freedom Mortgage Corp., 790 F. Supp. 2d 283, 287 (D.N.J. 2011). Moreover, to the extent that Plaintiffs were engaging in any managerial tasks, it was limited. At bottom, the record reflects that there were not significant differences with respect to Plaintiffs' factual and employment settings.

Secondly, it is within this Court's discretion to determine "whether the potential defenses [available to Defendants] would make the class unmanageable." Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000) (citing Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 52 (3d Cir. 1989)). The FLSA contains an exemption that does not require employers to pay

overtime wages to employees who serve in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a). As the Third Circuit has noted, "because the FLSA is a remedial statute, the Supreme Court has long held that exemptions from the FLSA are to be narrowly construed against the employer." Reich v. Gateway Press, Inc., 13 F.3d 685, 694 (3d Cir. 1994).

In the instant matter, determining whether Plaintiffs fall under an exemption would not make the class unmanageable. As this Court has already determined, the evidence reflects that Plaintiffs performed substantially similar duties and nearly all had the same position of Shift Manager. While the record testimony contains variations with respect to certain aspects of Plaintiffs' job duties, they are immaterial differences. Contrary to Defendants' arguments, the record demonstrates common evidence among Plaintiffs with respect to the applicability of the executive and administrative exemptions.

Lastly, procedural considerations and fairness weigh in favor of collective treatment of Plaintiffs. Because the record testimony indicates similarities among Plaintiffs' duties, responsibilities, training, and tasks, a collective action would effectively lower the parties' costs, limit the controversy to one proceeding, and promote judicial efficiency. See Hoffman La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (noting that a collective action provides the benefit of "lower individual costs to vindicate rights by the pooling of resources . . . [and] efficient resolution in one proceeding of common issues of law and fact"). Even though Defendants point to credibility issues in connection with résumé fraud, the record testimony reflects that it is an anomalous situation.

Based on the record and foregoing analysis, Plaintiffs have satisfied their burden in demonstrating that they are similarly situated. Accordingly, this Court finds that the instant FLSA collective action does not require decertification.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Decertification is **DENIED**.

s/Susan D. Wigenton, U.S.D.J.

Cc:   Madeline Cox Arleo, U.S.M.J.